# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO GUZMAN, | ) 1:08cv01796 DLB |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Gustavo Guzman ("Plaintiff"), proceeding *pro se*, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for Supplemental Security Income ("SSI") on July 29, 1992, which was denied. AR 8, 50. Plaintiff subsequently applied for SSI on April 24, 1998. AR 50. When Plaintiff originally applied for SSI in July 1992, no Disability Insurance Benefits ("DIB")

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

claim was taken. AR 50. The Commissioner subsequently allowed Plaintiff to pursue a claim for DIB benefits. AR 8, 50.

Plaintiff alleged disability since January 28, 1985, due to lower back problems. AR 50, 87. Plaintiff's last date insured was September 30, 1990, and only the period from January 28, 1985 to September 30, 1990 is at issue. AR 8, 49-50, 82. After his DIB application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 47, 48, 52-55, 57-61, 62-69. ALJ Laura Speck Havens held a hearing on April 2, 2008, and denied benefits on June 13, 2008. AR 5-14, 16-25. On September 25, 2008, the Appeals Council denied review. AR 1-3.

Hearing Testimony

ALJ Havens held a hearing on April 2, 2008, in Stockton, California. Plaintiff appeared without a representative. A Spanish-English interpreter also appeared. AR 18.

At the outset of the hearing, the ALJ noted that Plaintiff appeared without an attorney or a representative. The ALJ offered to postpone the case to allow Plaintiff the opportunity to talk to an attorney. Plaintiff stated he did not need an attorney and wanted to go ahead. AR 18. The ALJ also indicated that Plaintiff might be entitled to free legal services if he qualified and again asked him if he wanted the opportunity to look for an attorney. Plaintiff responded that he tried to look for a lawyer, but no one would help him. The ALJ offered him another opportunity, but Plaintiff wanted to proceed with the hearing. AR 19.

Plaintiff stated that he already was on SSI benefits. AR 20. He was born in 1955 and completed the fifth grade in Mexico. He was hardly able to read in English. He suffered an on-the-job injury in September 1984 and has low back pain. AR 21.

As to his daily activities in 1990, Plaintiff testified that he lived in a house with his wife and daughters. During the relevant time period, he did not do any household chores. He would take his wife grocery shopping and take the girls to the doctor. He went to his doctor frequently. He exercised for his back 10 or 15 minutes. He watched TV. He could drive without pain for a half hour to an hour. AR 21-22.

In 1990, his treating doctor was Dr. Soto. Plaintiff was taking Tylenol and Dr. Soto gave him therapy. AR 22-23.

Plaintiff testified that in the period before 1990 he was able to walk or stand for a very short time. He had problems sitting because the pain radiated to his upper back. He was able to sit without pain about a half hour. AR 23. The most he could lift was 20 pounds. He would feel pain in the middle of his back. It felt like needles and pins, like somebody was stabbing him. The pain came and went. AR 24.

Medical Record

On October 2, 1986, Donald L. Ansel, M.D., completed a neurologic evaluation of Plaintiff at the request of an attorney. AR 113-19. Plaintiff reportedly suffered two injuries. In August 1984, he fell from a tree and his tailbone hit a branch. He did not see a physician and continued to work. In September 1984, Plaintiff slipped and fell off a truck onto his abdomen. He continued to work. In June or July 1985, when he realized he could not return to work, he went to see Antonio Soto, a chiropractor. Dr. Soto took x-rays and gave Plaintiff treatment. AR 113.

On physical examination by Dr. Ansel, Plaintiff's gait and station were normal, but he tended to place his hands on his low back as if to emphasize his discomfort. Heel and toe walking was done with complaints of pain in the low back, and his hands were placed on the low back. Examination of Plaintiff's neck demonstrated full range of motion with production of low back pain. Examination of his low back revealed that Plaintiff was able forward flex about 35 degrees, hyperextend about 15 to 20 degree and laterally bend about 20 to 25 degrees. All back movements were associated with complaints of low back pain. Plaintiff's seated straight legraising was about 65 to 70 degrees. His supine straight leg raising was positive at 25 to 30 degrees bilaterally for production of low back pain. This was "vastly out of keeping with what he was able to tolerate while sitting." AR 115. In a prone position, bending his lower leg to a 90 degree angle to his thighs produced severe low back pain, worsened by plantarflexion of the toes. Dr. Ansel opined that Plaintiff's response to the maneuvers "strongly suggests a functional component to his complaints." AR 115.

3

1    On motor examination, Plaintiff had collapsing weakness of the right and left extensor hallucis longus on the second test, but not the first. Plaintiff also claimed an inability to flex the toes of the left side in a downward direction. A sensory examination showed decreased pain from the waist level downward in a nonorganic type of pattern. His deep tendon reflexes were 2+ and equal. There were no Hoffman or Babinski responses. AR 115.

Dr. Ansel's impression was that Plaintiff was "functionally elaborating, either on a subconscious or conscious basis, to a significant degree." AR 118. His tolerance of straight leg-raising while supine was "vastly out of keeping with what he was able to tolerate while seated." AR 118. Dr. Ansel noted that in a prone position, "flexion of the lower legs on the thighs and then subsequent plantarflexion of the toes produced significant low back pain, causing him to grimace and to make exclamations of discomfort which did not fit into any organic pattern." AR 118. Similarly, his sensory level in the low back did not fit any organic pattern. It was Dr. Ansel's overall impression that there was a "large amount of psychological or functional elaboration taking place with no clear-cut evidence of organic disease in this man." AR 118.

Dr. Ansel indicated that Plaintiff's June 1985 x-rays of the low back appeared unremarkable. AR 188. Dr. Ansel also noted that Plaintiff basically lost no time from work as a result of either injury. He doubted that Plaintiff had any organic disability, but recommended that a CT scan of the low back be done for the sake of completeness. AR 118-19.

A March 12, 1987 CT Scan of the lumbosacral spine was negative. Plaintiff had mild bulging of the annulus at L4-5. AR 128.

On May 17, 1988, Pierre M. Dreyfus, M.D., completed a neurologic evaluation. AR 120-27. On physical examination, Plaintiff's station and gait were normal with no detected limp. AR 124. His back examination revealed some restriction of motility. Plaintiff was able to bend forward approximately 45 degrees. His flexion and hyperextension were limited. Straight leg raising was painful at about 50 degrees bilaterally. Some tenderness was elicited over the lumbosacral and coccygeal spine. He was able to walk on heels and toes with some discomfort. On neurological examination, Plaintiff appeared to have normal mental status. AR 125.

Dr. Dreyfus diagnosed chronic myofascial strain of the lumbar, sacral and coccygeal spine. AR 125. He opined that Plaintiff was "permanent, stationary, stable and ratable" and was precluded "from very heavy work." AR 126. Dr. Dreyfus recommended ongoing medical care of the conservative type. He had no reason to believe that Plaintiff was malingering or overreacting. AR 126.

On September 27, 1998, Dr. Dreyfus reviewed the results of a radionuclide bone scan performed on September 7, 1988, and a lumbosacral spine series performed on September 6, 1988. The bone scan was negative. Dr. Dreyfus opined that the lumbosacral spine film did not account for Plaintiff's ongoing chronic myofascial strain of the lumbar, sacral and coccygeal spine. Instead, Plaintiff's problem was one of ligamentous and muscle strains. Dr. Dreyfus saw no reason for changing his earlier conclusions. AR 129.

On April 11, 1989, Robert England, M.D., completed a consultative orthopedic evaluation of Plaintiff. AR 131-33. Plaintiff could heel, toe and tandem walk. AR 132. His right and left bending was to 15 degrees and forward flexion was to 45 degrees. Apical loading and pelvic twist caused pain. Seated straight leg raising was negative, but lying straight leg raising was positive at 20 degrees. Plaintiff had full range of motion of the hips, knees and ankles without pain or hesitation. Dr. England diagnosed Plaintiff with lumbar strain. AR 132. Physical examination objective findings were within normal limits. Dr. England opined that Plaintiff had some suggestion of pain augmented behavior and there appeared to be "an element of exaggeration." AR 133.

<u>ALJ's Findings</u>

The ALJ found that Plaintiff last met the insured status requirements on September 30, 1990. Plaintiff had not engaged in substantial gainful activity from his alleged onset date of January 28, 1995, through his date last insured. After analyzing the evidence, the ALJ found that Plaintiff had a severe low back impairment through the date last insured. The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") for the full range of medium work and could perform his past relevant work as a farm laborer. The ALJ also determined that there

were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. AR 10-13.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(g). Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability through the date last insured; (2) has an impairment or a combination of impairments that is considered "severe" (low back impairment) based on the requirements in the Regulations (20 CFR §§ 404.1520(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) can perform his past relevant work; and also (5) retains the RFC to perform a significant number of medium jobs. AR 10-14.

**DISCUSSION**

Plaintiff admits that he does not have any medical evidence that the Commissioner does not already have to support his argument of being disabled on or before September 30, 1990. Instead, Plaintiff argues that "the fact that I have not worked since January 28, 1985, and that I did seek medical attention before 1990, should be taken into consideration." Plaintiff's Opening Brief, p. 2.

As to Plaintiff's first contention regarding his inability to work since January 28, 1985, the ALJ did not fail to consider whether Plaintiff had engaged in work activity. Specifically, at step one of the sequential evaluation process, the ALJ considered whether Plaintiff had engaged in substantial gainful activity during the relevant time period. AR 9. A claimant will be disqualified for disability benefits at step one if he engaged in "substantial gainful activity." Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994). Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." 20 C.F.R. 404.1572. Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of January 28, 1985, through his date last insured. AR 10. Accordingly, the ALJ did not err at step one regarding Plaintiff's work activity.

Plaintiff also has asserted that he cannot work due to his back injury. Opening Brief, p. 2. The Court construes this assertion as an argument that the ALJ erred in finding that Plaintiff had the residual functional capacity to perform the full range of medium work. Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir.2006).

In determining that Plaintiff had the RFC to perform the full range of medium work, the ALJ discussed the medical evidence within the context of Plaintiff's credibility, finding that "only the thinnest of objective evidence" revealed a back impairment and that most of the examining physicians concluded that Plaintiff was malingering. AR 12. The ALJ first considered the October 1986 evaluation by Dr. Ansel, who found after examination and testing that Plaintiff was functionally elaborating to a significant degree and that there was "no clear-cut evidence of organic disease." AR 12, 118. The ALJ gave great weight to Dr. Ansel's conclusions regarding malingering. AR 12.

Additionally, the ALJ considered Dr. England's consultative orthopedic evaluation in April 1989, which supported Dr. Ansel's determination. AR 12-13, 131-33. Although Dr. England diagnosed Plaintiff with lumbar strain, physical examination objective findings were within normal limits. AR 132-33. Dr. England opined that Plaintiff had some suggestion of pain augmented behavior and there appeared to be "an element of exaggeration." AR 133. The evidence from the examining physicians certainly supports a finding that Plaintiff was exaggerating his symptoms and was not as limited as he alleged. The ALJ may use "ordinary techniques" in addressing credibility, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540,

1  544 (9th Cir. 1996). Further, an ALJ can reject a claimant's credibility upon finding evidence of
2  malingering. Benton v. Barnhart, 331 F.3d 1030, 1041 (9th Cir. 2003).

3  Despite assigning greater weight to the physician determinations regarding Plaintiff's
4  exaggeration, the ALJ considered the functional limitations associated with mild discogenic
5  changes and the assessment of Dr. Dreyfus, who did not believe that Plaintiff was malingering.
6  AR 12-13, 126, 128. Dr. Dreyfus diagnosed Plaintiff with chronic myofascial strain of the
7  lumbar, sacral and coccygeal spine and opined that Plaintiff was precluded "from very heavy
8  work." AR 125-26. Giving Plaintiff the benefit of the doubt, the ALJ accepted the functional
9  limitations assessed by Dr. Dreyfus, which precluded Plaintiff from very heavy work. AR 13.
10 An ALJ may properly consider testimony from physicians concerning the nature, severity, and
11 effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947,
12 959 (9th Cir. 2002). However, neither Dr. Dreyfus nor any other physician identified greater
13 functional limitations. Accordingly, the Court finds that the ALJ's discussion of the evidence
14 and Plaintiff's credibility supported a finding that Plaintiff retained an RFC for medium work.

15 As a final matter, Plaintiff appears to argue that the ALJ erred in her consideration of
16 Plaintiff's lack of medical treatment between the time of his injuries in August and September
17 1984 until June or July 1985. Opening Brief, p. 1. In this case, the ALJ discounted Plaintiff's
18 reports of disabling back pain, stating:

> If the claimant's back was causing the level of pain that he asserts, one would
> think that he would have sought medical treatment and prescription medication
> for his pain in the first year following his purportedly disabling injury. Programs
> exist in the claimant's area that provide treatment and mediation [sic] at little or
> no cost to the indigent.

22 AR 12. Plaintiff claims that medical attention was "not sought right away" because he "could
23 not afford seeing a doctor." Opening Brief, p. 1. An ALJ is permitted to consider lack of
24 medical treatment in assessing credibility. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).
25 However, as the Ninth Circuit has stated, "[d]isability benefits may not be denied because of the
26 claimant's failure to obtain treatment he cannot obtain for lack of funds." Orn v. Astrue, 495 F.3d
27 625, 638 (9th Cir. 2007) (citing Gamble v. Chater, 68 F.3d 319, 321 (9th Cir.1995)). While the
28 ALJ noted the potential availability of low or no cost programs for treatment, her decision to

discount Plaintiff's credibility for failing to obtain treatment he could not afford cannot support an adverse credibility finding.  Nonetheless, this lone error does not undermine the ALJ's decision or the findings regarding Plaintiff's credibility.  This is particularly true in light of the affirmative evidence of malingering in the record. *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Gustavo Guzman.

IT IS SO ORDERED.

Dated:   **April 5, 2010**                        /s/ **Dennis L. Beck**
                                                              UNITED STATES MAGISTRATE JUDGE